HOWE v. MOREY.

1. CONTRACTS—ACTION FOR BREACH—DECLARATION—SUFFICIENCY.
Where plaintiff declared on the common counts in assumpsit, and furnished a bill of particulars, claiming for services and expenses incurred in logging operations on defendant's land, and defendant was not surprised at plaintiff's testimony that defendant agreed to take the work as plaintiff left it and pay his debts for labor, and also pay him for his services and expenses, a judgment for plaintiff will not be reversed on the ground that the declaration should have set forth both the inducement for and the terms of the agreement.

2. EVIDENCE—EXCLUSION—HARMLESS ERROR.
Where, after sustaining an objection to a question asked plaintiff on cross-examination, the court withdraws the ruling and expressly permits defendant to go into the matter, the error in sustaining the objection is not prejudicial.

3. APPEAL AND ERROR—REVIEW—INSUFFICIENT RECORD.
Where, in an action for services and supplies in logging operations, the evidence showed the value of the services and supplies, and an agreement binding defendant to pay therefor, an instruction that the verdict for plaintiff must be based on the agreement, irrespective of the value of the services, and, on finding the agreement, the verdict should be in such sum as

plaintiff might be entitled to, cannot be held prejudicial, where the whole charge is not in the record, and there are no requests for instructions, and the amount of the verdict is not shown.

Error to Missaukee; Chittenden, J. Submitted June 16, 1905. (Docket No. 32.) Decided September 20, 1905.

Assumpsit by Allen E. Howe against William J. Morey for work and labor done, and for goods sold and delivered. There was judgment for plaintiff, and defendant brings error. Affirmed.

*E. F. Sawyer*, for appellant.

*F. O. Gaffney*, for appellee.

OSTRANDER, J. The plaintiff in this case claims that, with his partner, one Buck, he undertook to cut from defendant's land certain hemlock timber, paying defendant stumpage therefor, and that his lumbering operations proceeded to a point where, on account of inability to market the logs or lumber, he was unable to pay the men employed by him or to immediately continue the work; that his partner agreed that he might make such terms as he could about the disposal of the logs and property at the camps; and that he did make an arrangement with the defendant, the owner of the land, by the terms of which defendant was to take the operations and property as plaintiff left them, including the camps and the logs cut and skidded, and to pay the debts for labor and supplies, and plaintiff for labor rendered by himself, his wife, and his team, and for the supplies which plaintiff had furnished and paid for in doing the work up to that time. In other words, plaintiff claims that defendant was to take the job as he left it, paying therefor as above stated. In the language of the record, in the testimony of plaintiff:

"Mr. Morey agreed to pay all claims against the job, and to pay my wife and me for our time. He also agreed

to pay for the produce that I put in. I accepted that proposition. * * * He wanted to know how much the job cost me, and I told him as near as I could. He wanted to know if I would sell for what it cost me, and I told him I would. There was no price agreed on that day before I went home. * * * I next saw Mr. Morey up at the camp, when I was there showing Mr. King around, and he told me to come over the next night and settle; but when I came he wouldn't pay. We made no settlement, he was then in possession of the camp. I gave him a bill of all the claims against the job. It contained the men's wages, my time, my wife's time, and the stuff we furnished the camp. * * * I kept no copy of it."

It is undisputed that defendant took possession of the logs and camps, continued the operations, and paid the men. He denies having made the arrangement plaintiff claims was made, and says that, on account of plaintiff's inability to pay his men, they contemplated and threatened putting a lien upon the logs, and that to prevent that and save himself from loss he paid them and continued the work. Stated in another way, he claims that plaintiff and his partner abandoned their operations, and that he, without making any bargain of any kind with them, took them up where the plaintiff stopped. Later on plaintiff sued defendant, declared upon the common counts in assumpsit, and furnished a bill of particulars of his demand, which is here set out in full:

| | |
|---|---:|
| "To 39 days' work performed by plaintiff as foreman between September 26 and November 4, 1899, at $60 per month | $90 00 |
| To 39 days' work performed by team during the same time, at one dollar per day | 39 00 |
| To 39 days' work during the same time, performed by plaintiff's wife in cooking at the said camp | 39 00 |
| To hay | 10 00 |
| To flour | 6 30 |
| To potatoes | 3 00 |
| To canned fruit | 12 00 |
| To cabbage | 2 00 |
| To lumber in building and repairing camps | 4 00 |
| Total | $205 30 |

141 MICH.—25.

" All of which said sums the defendant promised to pay to plaintiff upon the 1st day of December, A. D. 1899, in consideration of plaintiff turning over to the defendant said job, together with all logs cut and the benefits of all said labor performed and produce furnished, and which was done by plaintiff on the said 1st day of December, 1899."

The plea was the general issue, with notice that defendant would show in his defense that if any labor was performed by plaintiff and his wife, and if any materials were furnished by him while at work on said lumber job, they were furnished for his own use and in his own behalf; that plaintiff and Buck abandoned the work, leaving a large amount of labor bills unpaid; that defendant never hired any of said labor to be performed, nor such materials to be furnished, and never agreed to pay for the same, either before or after it was performed, but that the timber being logged belonged to defendant, and, to save the same from confiscation under the lien law, he was forced to and did pay upwards of $200, and that, in order to save any portion of the logs and to make them merchantable, he was forced to expend a large amount of money in skidding, hauling, and banking the same; that the logs were cut in an unskillful and unworkmanlike manner, entailing a large amount of damage and expense upon the defendant; that the timber was cut to improper lengths, causing defendant loss in selling and disposing of it. These items of damage, the notice concludes, would be set off and recouped against any claim which plaintiff might have.

The first proposition raised by the assignments of error is that the testimony offered of the claim of plaintiff was inadmissible under the declaration and bill of particulars. In disposing of this objection, the learned trial judge said:

"I think, perhaps, I can shorten this matter somewhat by giving my idea on it and asking a few questions. It seems to me that, under the declaration and opening statement of the plaintiff, he must rely upon the agreement which, he claims, was made when Mr. Morey came

back from seeing Mr. Buck; that if any such agreement was made, and I don't assume that there was, that he told him he would pay all these bills, and pay him for his work and supplies; and that he has failed to pay for that. Could not that be proven under the declaration? The first specific contract, whereby they were to lumber certain logs and timber and do certain things, I hardly think would be material at this time or admissible. The plaintiff must rely, if he relies at all under this declaration, on the simple agreement of this man to pay for these goods and this work, if he did agree to it, and nothing else."

Counsel for plaintiff, in reply to the objection made, says that the contract which he sought to prove, and did prove to the satisfaction of the jury, was one wholly performed on the part of the plaintiff, leaving nothing to be done by defendant but pay the money he agreed to pay; that the bill of particulars gave an itemized statement of plaintiff's claim; and that there was no cause for defendant's being misled or surprised at the time.

Unquestionably there is force to the objection made on the part of appellant. The rules of pleading would have been better observed if the declaration had set out both the inducement for and the terms of the contract alleged to have been made between the plaintiff and the defendant. We are not, however, disposed to reverse the case because of insufficiency of the pleadings. It is not apparent upon the record that in fact defendant was surprised by the testimony offered or by the theory advanced by plaintiff's counsel. As the trial proceeded the precise issue between the parties became clear, and after the defendant had been sworn as a witness it was stated by the court, without correction or contradiction offered, as follows:

"Now, in order that there may be no misunderstanding in the proofs here: This witness [the defendant] has sworn on cross-examination that he took possession of this property without any agreement whatever with this man; that he simply went on there and took possession of it. * * * In other words, on one side there is an agreement claiming to have been made by Mr. Howe and Mr.

Morey that Morey would pay Howe for his labor and for those supplies. This witness (Morey) denies that agreement, and says that he took possession of this property without any agreement or understanding whatever."

For the purpose, as it was asserted, of showing that it was not likely that defendant would have made the agreement which plaintiff claims he did make, counsel for defendant, on cross-examination of plaintiff, the subject-matter being the manner in which the logs were cut, asked the following question:

"Q. Were they cut in a good workmanlike manner?

"Mr. Gaffney: Wait. That is opening the door to a very wide and very immaterial investigation in this matter. The question of the performance of that job between Mr. Morey and Mr. Buck isn't in controversy here at all. The question in this case is, Was there a contract made between Mr. Morey? Remember that counsel objected to the introduction of this contract between Buck and Morey. Now, if he goes into this line of cross-examination, that contract must be admitted.

"Mr. Sawyer: It is claimed that Mr. Morey agreed to pay everything; all that that job cost up to that time. But it has already developed that this man could not sell that timber, and we have a right to show that he could not sell it because it was utterly mismanaged, because it was worthless, because it had no value whatever; and the jury have a right to know that this timber had no value whatever as it stood there, that it was worthless, and more than worthless, in order to show the improbability of Mr. Morey, a good business man, coming up and agreeing to pay the plaintiff all that he had put into that job when it was worthless."

The testimony was excluded. Further along in the trial, the defendant being called and sworn as a witness, he was asked by his counsel:

"Q. Now, I will ask you if you know how much timber you got that was cut and skidded by Mr. Howe?"

To this an objection was interposed, and the testimony was excluded. On his cross-examination, he was asked:

"Q. After you had made this agreement, and after you

had taken possession of that job, you made arrangements with Gardner & Dominick by which they put a mill in there and cut and manufactured this timber, didn't you?"

To this counsel for defendant objected.

" *The Court:* The witness has said that he entered into possession of that job without making any bargain. Is that right, witness?

" *Witness:* Yes; that is right.

" *The Court:* Would it make any difference with this case, if Mr. Morey took possession of this man's labor, whether it was worth anything or not?

" *Mr. Gaffney:* Yes; as bearing upon his credibility, because he has stated that he never received any benefit from the work.

" *The Court:* Well, if you go into that; I shall allow the defendant to go into the question of the amount of work done on those logs. * * *

" *Mr. Gaffney:* Let me understand the court.

" *The Court:* Mr. Sawyer asked a question in regard to how many logs were skidded, or something of that kind. You objected to it. I sustained the objection. I now recall that ruling, and will allow Mr. Sawyer to go into it.

" *Mr. Gaffney:* Well, then, your honor, I will withdraw this question to save going into that matter. I withdraw it."

Notwithstanding the withdrawal of the question, the court stated that in his opinion it was material to show what defendant took possession of and what it was worth, and that the question that counsel for defendant asked on direct examination as to what he did take possession of was material. The objection of plaintiff's counsel to it was overruled, and counsel might govern themselves accordingly. After this ruling counsel for defendant undertook to interrogate his client, and, being told that his client knew nothing about the number of logs or the number of feet that were there of his own knowledge, made the following statement:

"I thought not. That is all, then. I cannot go into it. I thought so at the time I asked the question; but the court ruled, and so I didn't find out."

This left the case to stand upon the testimony of the defendant that he received no benefit from the labor which plaintiff had put upon the logs in question; that whether Gardner & Dominick allowed him any credit on that account he could not tell, because he had put a lot of work upon the logs himself, and had turned over to the manufacturer sleighs and camp equipage and other property, making it impossible for him to tell whether he received any credit on account of plaintiff's labor on the logs.  It is not apparent that defendant was injured by the rulings of the court of which he complains.  The door was widely opened for him to show, if he could, the condition of the logs and the value of plaintiff's labor upon them.

Certain portions of the charge are complained of.  The seventh assignment of error is directed specifically to a portion of the charge which reads as follows:

" The amount of your verdict for the plaintiff, if any, must arise from the agreement, if any, made between the parties, and this amount must be arrived at, not because the services were worth that amount, but because it was agreed upon between the parties; that is, this jury, under the proofs, have practically nothing to say as to what the value of the plaintiff's services on that job was worth. There has been no proof, practically, as to what their value was, but the plaintiff relies upon an agreement whereby he claims that the defendant was to pay him for these services—regardless of what they were worth, I might add—and that this agreement is the basis of his action here today; and, if you find that there was such an agreement, that the defendant agreed to take this job off Mr. Howe's hands and pay him his time on the job, and for the supplies furnished, and for the team work, and for his wife's services, then your verdict will be for the plaintiff in such sum as you may find from the evidence he is entitled to.  But, if you find there was no such agreement made, your verdict will simply be no cause of action, because the plaintiff cannot recover in this action, unless there was such an agreement made between the parties."

The complaint made is that the jury were told that there was no evidence as to what the services were worth, and

that it was none of their concern whether they were worth anything or not; but, if they found that at a certain interview held between the parties nearly five years before the trial, the defendant had agreed to pay for everything that the plaintiff had put into the job, regardless of what it was worth, then they might find for the plaintiff such a sum as they *guessed* would be about right. The whole of the charge of the court to the jury does not appear in the record. Nor does it appear that counsel for the defendant preferred any requests to charge. It is not true, either, that there was no evidence given of the value of the services of plaintiff and his wife, or of the value of the work performed by the team, or of the supplies furnished by plaintiff. Such evidence as was given on the part of plaintiff was not disputed. It tended to show that the bill of particulars stated the items and the total correctly. What verdict the jury rendered, we do not know.

Confining ourselves to the errors which are assigned and the points which are made for appellant, we see no occasion to disturb the judgment. It is therefore affirmed, with costs.

MOORE, C. J., and CARPENTER, GRANT, and MONTGOMERY, JJ., concurred.